IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 14-0288-WS |
| | ) | |
| CLINTON CRABTREE and | ) | PUBLISH |
| JESSICA SHARON HOWARD, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This matter is before the Court on the defendants' motions to suppress. (Docs. 13, 22). The government has filed a response and the defendants replies, (Docs. 25-27), and the motions are ripe for resolution.

On or about November 3, 2014, law enforcement officials executed a search warrant at an apartment complex in Saraland, Alabama, specifically, Apartment #98 of the North Pointe complex located at 205 Shelton Beach Road, which was then rented by defendant Howard. The warrant, however, described the premises to be searched as "[a] single family dwelling … located off of Patillo Road in Mount Vernon, Alabama[,] said to be occupied by a known white male, Daniel Oneal Newburn," with GPS coordinates provided. (Doc. 13 at 1, 7). The two locations are approximately 15 miles apart as the crow flies.

The defendants argue that the warrant was invalid and the search unconstitutional. The government responds that the warrant was valid and the search constitutional under the circumstances, and that, even if not, the "good faith exception" recognized in *United States v. Leon*, 468 U.S. 897 (1984), renders the seized evidence admissible.

"[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched*, and the persons or things to be seized." U. S. Const. amend. IV (emphasis added). "The

uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional" because such a search is constitutionally unreasonable. *Groh v. Ramirez*, 540 U.S. 551, 559-60 (2004) (internal quotes omitted).

The place to be searched was an apartment in Saraland rented by defendant Howard and, as the government concedes, the location specified in the warrant – a house in Mount Vernon, some 15 miles away and occupied by another individual – is "completely unassociated with" the place to be searched. (Doc. 25 at 7). The warrant thus did not describe the place to be searched at all, much less with particularity. The warrant therefore did not satisfy the Fourth Amendment. *Groh*, 540 U.S. at 557, 558 (a warrant that "did not describe the items to be seized *at all*" suffered from "facial invalidity") (emphasis in original). Because the warrant failed to satisfy the constitutional particularity requirement, the search conducted pursuant to that warrant was an "unreasonable searc[h]" under the Fourth Amendment and thus unconstitutional. *Id*. at 563 ("Because petitioner did not have in his possession a warrant particularly describing the things he intended to seize, proceeding with the search was clearly 'unreasonable' under the Fourth Amendment.").

The government gamely attempts to extricate itself from its predicament. According to the government, federal deputy marshals arrived at Howard's apartment to execute an arrest warrant on defendant Crabtree. While in the apartment, the marshals observed drug paraphernalia and what they believed was methamphetamine and a gun. A Saraland police officer was summoned to the apartment, and she promptly prepared an affidavit and search warrant, presenting them to a state judge the same evening. The officer's affidavit correctly identified Howard's apartment as the place to be searched, but she failed to plug that information into her warrant template. As a result, the warrant presented to the judge and signed by him without alteration still carried a description of the

premises made the subject of her most recent previous search.  The officer then returned directly to the apartment and executed the warrant.  (Doc. 25 at 1-4).

According to the government, under these circumstances the warrant satisfied the particularity requirement.[1]  The government cites *United States v. Burke*, 784 F.2d 1090 (11th Cir. 1986), for two propositions:  (1) that "[t]he Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may 'with reasonable effort ascertain and identify the place intended,'" *id*. at 1092 (quoting *United States v. Weinstein*, 762 F.2d 1522, 1532 (11th Cir. 1985)); and (2) "[i]n evaluating the effect of a wrong address on the sufficiency of a warrant, this Court has also taken into account the knowledge of the officer executing the warrant, even where such knowledge was not reflected in the warrant or in the affidavit supporting the warrant."  *Id*. at 1093 (citing *Weinstein*).  The government concludes that, because the executing officer knew what address was actually intended as the place to be searched, the warrant was sufficiently particularized.  (Doc. 25 at 4-5).

*Burke*, however, does not condone a warrant's utter lack of description of the place actually intended to be searched (as is the case here), with the void to be filled by the officer's awareness of the intended target.  On the contrary, *Burke* explicitly "requires … that the … warrant describe the premises."  784 F.2d at 1092.  If, and only if, the warrant contains such a description may the officer rely

---

[1] "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents."  *Groh*, 540 U.S. at 557.  It may be that the Fourth Amendment can be satisfied if the warrant is deficient but an affidavit, expressly incorporated by the warrant and physically accompanying the warrant, particularly describes the premises.  *See id.* at 557-58 (noting, without adopting, the position of various appellate courts); *United States v. Weinstein*, 762 F.2d 1522, 1531 (11th Cir. 1985) ("Clearly, an affidavit incorporated into a warrant by express reference and attached to and accompanying the warrant can cure ambiguity in the warrant itself.").  The government does not assert that this standard is met here.  Nor could the government plausibly do so, since the warrant patently does not purport to incorporate the affidavit.  (Doc. 13 at 7).

on personal knowledge and other information to eliminate any residual error or ambiguity in the description and deduce the precise location to be searched.

The facts of *Burke* and *Weinstein* bear this out. In *Burke*, the warrant described the place to be searched as "38 Throop Street [in Atlanta], a two-story red brick building, trimmed in a reddish-brown paint with a shingled roof and three adjacent apartments, with apartment 840 being the far left apartment at that address looking at it from the front." 784 F.2d at 1091. The defendant actually lived in apartment 840 at 48 Troup Street in Atlanta. The Court found the particularity requirement met because: (1) there was no Throop Street in Atlanta, and Troup Street was the only street with a closely similar name; (2) there was no 38 Troup Street, but 48 Troup Street was two down from 36 Troup Street; (3) the warrant described the physical appearance of the defendant's building accurately and in detail; (4) there was no other apartment 840 in the entire housing project; and (5) a confidential informant had physically pointed out the correct apartment to the law enforcement agent who then obtained the search warrant, and that agent pointed out the correct apartment to the executing officer. *Id.* at 1091-93.

In *Weinstein*, the warrant described the place to be searched as "Majestic Sales Corp., 2501 S. 56th Avenue, West Hollywood, Florida, more particularly described as a single story white stucco warehouse building having an entrance facing the west side of the said building on the northwest corner of the said building." 762 F.2d at 1532. In fact, there were two entrances on the west side of the building, and Majestic Sales' entrance was on the southwest corner; the entrance on the northwest corner was to an unconnected automobile supply firm. The Court found the warrant's description adequate because the agent executing the warrant had been to the premises and knew which door led to Majestic Sales. *Id.* at 1532-33.

If any further proof were required to refute the suggestion that a complete failure of the warrant to describe the premises can be overcome by the executing officer's awareness of the intended target, it would be found here: "If an objective

4

reading of the description contained on the face of the warrant did not fairly direct attention to the place actually searched, we would be compelled to hold the search illegal without further discussion." *United States v. Haydei*, 649 F.2d 1152, 1157 (5th Cir. 1981). That is, unless the warrant contains at least a flawed description of the premises actually searched, constitutional particularity is necessarily absent.

Moreover, the government's position – that the only concern of the particularity requirement is ensuring that the executing officer searches the correct premises – will not bear scrutiny. For this proposition, the government quotes a snippet from *Burke*, but it ignores the following statement found in the same paragraph: "The warrant need only describe the place to be searched with sufficient particularity to [1] direct the searcher, [2] to confine his examination to the place described, and [3] to advise those being searched of his authority." 782 F.2d at 1092 (bracketed material inserted). The opinion then echoes these three essential purposes of the particularity requirement: "We hold that, under these circumstances, the search warrant described the premises to be searched with sufficient particularity [1] to direct the officers to the correct apartment, [2] to confine the officers' examination to that apartment, and [3] to place the occupants on sufficient notice of the officers' authority to search the premises. The warrant therefore [i.e., because it met all three purposes] satisfied the particularity requirements of the Fourth Amendment." *Id*. at 1093 (bracketed material inserted); *accord Weinstein*, 762 F.2d at 1532; *United States v. Haydei*, 649 F.2d 1152, 1157 (5th Cir. 1981). The Supreme Court has similarly held that "[a] particular warrant also assures the individual whose property is searched or seized of the *lawful authority of the executing officer*, his need to search, *and the limits of his power to search*." *Groh*, 540 U.S. at 561 (emphasis added, internal quotes omitted); *accord id*. at 565 n.9 ("[T]he Fourth Amendment's particularity requirement assures the subject of the search that a magistrate has duly authorized the officer to conduct a search of limited scope."). A warrant that on its face authorizes only a search of a specific individual's house in Mount Vernon could

5

not possibly authorize a search of a "completely unassociated" individual's "completely unassociated" apartment in another town fifteen miles away. Nor could such a warrant possibly assure the defendants that a search of Howard's apartment had been judicially authorized.

The government next points out that affidavits submitted in support of applications for search warrants must be interpreted realistically. (Doc. 25 at 5-6). This is no doubt correct, but it is also irrelevant. The issue here is not the construction of an affidavit but of the ensuing warrant.

Next, the government argues that the warrant's description of the premises to be searched as a house in Mount Vernon is but a "mere technical mistake or typographical error" which, under *Groh*, does not defeat particularity. (Doc. 25 at 6-7). Whatever the outer boundaries of a technical mistake or typographical error under *Groh* may be, they do not encompass a complete failure to describe the premises intended to be searched. This is obvious from *Groh* itself, which held that a failure to describe the items to be seized "at all" could not be characterized as a technical mistake or typographical error. 540 U.S. at 558. As noted above, the warrant in this case failed to describe Howard's apartment "at all," and such a complete failure cannot be constitutionally inconsequential.

Finally, the government proposes that *Groh* does not apply here because *Groh* (1) was a civil case and (2) involved a failure to describe the items to be seized. (Doc. 25 at 6-7). As to the former contention, surely the government does not suggest that the Fourth Amendment is less demanding in the criminal context than in the civil context. Because the government does not explain why it is significant that *Groh* involved a civil lawsuit, the Court moves on.

The government asserts that a warrant's description of the items to be seized implicates a "discretionary function" of the judicial officer, who could decide that the items listed in the application and/or affidavit reach too far (or not far enough) and tailor the warrant accordingly. In contrast, the judicial officer almost always accepts the applicant's description of the premises to be searched.

(Doc. 25 at 6-7). This may or may not be so, but again the government fails to explain how such a distinction renders *Groh* inapposite to this case. The issue is the particularity vel non of the description contained in a warrant, not the authorship of the description.

For the reasons set forth above, the Court concludes that the search of Howard's apartment was constitutionally unreasonable and in violation of the Fourth Amendment. The government argues that, even if this is so, under *United States v. Leon*, 468 U.S. 897 (1984), the evidence collected during or as a result of the search should not be excluded. (Doc. 25 at 8-10).

Although phrased as a "good-faith exception" to the exclusionary rule, *Leon*, 468 U.S. at 924, the exception requires the officer's "objectively reasonable reliance" on a subsequently invalidated search warrant. *Id*. at 922. As applicable here, "the officer's reliance on … the technical sufficiency of the warrant [the judicial officer] issues must be objectively reasonable." *Id*. Thus, "depending on the circumstances of the particular case, a warrant may be so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id*. at 923.

*Groh* controls the application of *Leon* to this case.[2] In *Groh*, the warrant described the items to be seized by repeating the description of the place to be searched. 540 U.S. at 554 n.2. The warrant thus nominally described the items to be seized but, since the actual object of the seizure was not the house but certain contraband, "the warrant did not describe the items to be seized *at all*." *Id*. at 558 (emphasis in original). This "glaring deficiency," which "any reasonable police officer would have known was constitutionally fatal," fell squarely within the "so facially deficient" language of *Leon*. *Id*. at 564-65; *accord id*. at 561 n.4 ("Nor

---

[2] While the *Groh* Court employed *Leon* in a qualified immunity analysis, "we have explained that the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon* defines the qualified immunity accorded an officer." 540 U.S. at 565 n.8 (internal quotes omitted).

would it have been reasonable for petitioner to rely on a warrant that was so patently defective, even if the Magistrate was aware of the deficiency.").

This case is indistinguishable from *Groh*. While the warrant nominally described the place to be searched (a house in Mount Vernon), it did not describe the actual place to be searched (an apartment in Saraland) "at all." As in *Groh*, no reasonable officer could reasonably rely on a warrant so patently constitutionally defective. The *Leon* exception thus cannot be satisfied.

The government ignores *Groh* and instead relies on cases addressing *Leon* in the context of the existence vel non of probable cause. In that context, "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit" (or if the judicial officer "abandoned his detached and neutral role," or if the officer "could not have harbored an objectively reasonable belief in the existence of probable cause"). *Leon*, 468 U.S. at 926. The government stresses that the warrant's failure to describe the Saraland apartment was not the result of dishonesty or recklessness but mere "inadvertent oversight," which it believes should not result in exclusion. (Doc. 25 at 9). This case, however, is not governed by the probable-cause aspect of *Leon* but by its particularity aspect. In the latter context, as the *Groh* Court acknowledged, it is irrelevant that the officer was no more than negligent. 540 U.S. at 565.

"It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully executed." *Groh*, 540 U.S. at 563. This incorporates a "duty to ensure that the warrant conforms to constitutional requirements," *id*. at 563 n.6, including the particularity requirement. When, as here, "even a cursory reading of the warrant … – perhaps just a simple glance – would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal," *id*. at 564, the officer has failed in that duty and the exclusionary rule remains in full force.

For the reasons set forth above, the defendants' motions to suppress are **granted**. Any and all evidence seized during the search of Howard's apartment on

or about November 3, 2014 pursuant to the invalid search warrant, including without limitation each item listed by the government, (Doc. 25 at 3), is excluded as evidence at trial.[3]

DONE and ORDERED this 9th day of January, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Defendant Crabtree suggests, laconically and without apparent conviction, that the search was conducted before any warrant was issued. (Doc. 13 at 5). He bases this argument on the warrant, which reflects it was issued at 8:37 p.m. but which also reflects a return the same day at "1728 p.m." (*Id*. at 7). The government states that the Saraland officer did not arrive on the scene until approximately 8:00 p.m.; that only after that did she prepare an affidavit and warrant, travel to Mobile, and obtain the warrant; and that only after that did she execute a search, making return at approximately 9:30 p.m. Under such circumstances, she could not possibly have made return at 5:28 p.m., and the notation can be nothing other than a scrivener's error. (Doc. 25 at 2-3, at 7-8). Crabtree does not dispute the government's explanation. (Doc. 26). Accordingly, the motion to suppress on this alternative ground is **denied**.

Crabtree moves for an evidentiary hearing in the event his motion to suppress is not granted on the moving papers. (Doc. 13 at 2, 5). Because his motion to suppress is being granted, his motion for an evidentiary hearing is **denied as moot**.

9